CORAL GABLES PROPERTIES, INC., v. CHARLES STOPLER.

155 So. 799.
Division B.
Opinion Filed June 11, 1934.

*Edward B. Hope,* for Appellants;

*Ernest E. Roberts* and *Albert Bernstein,* for Appellee;

*Morton B. Adams,* as *Amicus Curiae.*

WHITFIELD, P. J.—On January 4, 1934, Charles Stopler brought a suit to foreclose the lien of tax sale certificates for unpaid taxes of the City of Coral Gables for the year 1928 upon eight city lots, the certificates having been issued in 1929, and later acquired by the complainant in due course of transfers. The complainant paid State, county and district taxes for 1930 and 1931, and redeemed city tax certificates for taxes of 1929 and 1930, but did not pay city taxes on the lots for the year 1931.

Several parties not including the City of Coral Gables were made parties defendant in the suit. One of the defendants, Coral Gables Properties, Inc., a Florida corporation, answered, setting up tax sale certificates for unpaid taxes of the City of Coral Gables for the years 1926 and 1927 upon the same land covered by complainant's certificates.

The court decreed that complainant's liens for city taxes of 1928 have priority over defendant's liens upon the same property for city taxes for 1926 and 1927.

The lots sold for $200.00 each, being much less than the first liens for taxes on the lots. The sale was confirmed. The defendant, Coral Gables Properties, Inc., "for itself and for and in the name of its co-defendants," appealed from the final decree and from the order confirming the master's sale as well as from an order denying a motion to dismiss the bill of complaint.

The ground of the motion to dismiss, that Chapter 14572, Acts of 1929, cannot be invoked in foreclosing liens for city taxes held by individuals, was not well taken. Southwest Enterprises, Inc., v. Frasse, ........ Fla. ........, 152 Sou. 175.

Another ground of the motion to dismiss is that "the bill of complaint fails to state a cause of action." Under

this general ground it is contended that the bill of complaint is defective because it was filed January 4, 1932, and does not allege that the complainant has paid the city taxes for 1931.

Section 14 of Chapter 14572, Acts of 1929, contains the following:

"A bill of complaint, unless in a suit of the State, shall be sworn to, and shall briefly set forth the fact of the issuance of the tax certificate or deed and the fact that complainant has paid all omitted and subsequent taxes and interest thereon and has redeemed all subsequent tax sale certificates affecting the same land."

If this suit is brought under Chapter 14572, the above quotation from the Act requires the complainant to set forth "the fact that complainant has paid all omitted and subsequent taxes and interest thereon." The complainant paid the city taxes for 1929 and 1930 by redeeming the tax certificates issued therefor, but did not pay the city taxes for the year 1931.

The suit was begun January 4, 1932, after the year 1931 had passed and after the taxes for 1931 were due and payable but before the taxes were delinquent. But the statute requires *all omitted and subsequent* taxes and interest thereon to be paid by complainant, as well as that complainant shall have redeemed all subsequent tax sale certificates covering the land. As the complainant's tax sale certificates are for unpaid city taxes for 1928, the city taxes for 1931 should have been paid as well as the city taxes for 1929 and 1930, which were paid by the complainant. The complainant did not even make the City of Coral Gables a defendant in the suit so as to give the city an opportunity to protect its rights in the premises, as is contemplated by Chapter 14572, where the city has a right that might not have matured.

The lien for the city taxes of 1931 continues until satisfied by payment or otherwise by adjudication in appropriate proceedings in which the holder of the lien is a party.

If this suit was not brought under Chapter 14572, but under other sections of the Compiled General Laws, permitting tax liens to be enforced in equity, the chancellor might require the prepayment of all taxes that are due though not in default, as an equitable consideration in affording an equitable remedy. Or the court might require the city to be made a party defendant so as to protect the rights of the city in the premises, as a condition for the equitable remedy invoked.

As the decree must be reversed on its main feature, the complainant may be allowed to amend as it may be advised.

In Allison Realty Company v. Graves Investment Co., filed May 25, 1934, it is held that the liens of State, County and municipal *taxes* are first liens superior to all other liens upon the lands assessed, and that all such first liens should be paid ratably upon equal terms and without priorities among them, whether the liens are for taxes of the same or different years. As the decree here gave priority to city tax liens for 1928, priority over city tax liens for prior years, there is substantial error.

Reversed for appropriate proceedings.

DAVIS, C. J., and TERRELL and BROWN, J. J., concur.

DAVIS, C. J. (concurring).—There can be but one lien for taxes that is superior to all other liens. My construction of our statute is not that each *annual assessment* for taxes creates a separate lien for the particular *assessment* made, but that the statute itself creates a single blanket first lien on all property, real and personal, for the purposes of tax enforcement as to all unpaid taxes. In fact, the precise language of the statute is that "this chapter" (meaning the

chapter on taxation) shall create *a* (single) lien upon property for the purposes "thereof" (namely, for the purposes of taxation). See Sections 894 and 896 C. G. L., 696 R. G. S.

The statute means that the statutory provisions for taxation *ex proprio vigore* create a single lien superior to all others. This lien is effective as to all, and for any and all, unpaid State, county and municipal taxes that are either: (1) presently due, or that (2) may in the future become due and payable on the taxed subject. Thus there is but one lien, notwithstanding there may be a series of unpaid installments of assessed taxes that each year's assessment represents.

There are at least two separate provisions of law authorizing foreclosure of a statutory tax lien. The most important of these is Chapter 14572. The principal advantage of a proceeding under Chapter 14572, Acts of 1929, is that attorney's fees may be recovered as a penalty against the delinquent property. As a consideration for allowance of a recovery of attorney's fees, Chapter 14572 imposes certain added burdens on complainant. One of these burdens is that as a condition to the filing of his bill of complaint, he shall pay up all subsequent certificates and omitted taxes that have accrued on the land upon which the foreclosure is prayed.

This requirement was no doubt imposed to insure the public authorities a steady flow of *current* revenue while permitting the certificate or tax deed holder to proceed with his foreclosure as to all prior certificates and taxes by merely making the lien holders parties to the suit. For example: Taxes may have become delinquent for 1925, 1926, 1927, 1928, 1929 and 1930. As many different certificates in the hands of as many different holders may have been sold for

these several year's taxes. Yet, under Chapter 14572, Acts of 1929, a purchaser could acquire the 1931 certificate, hold it for two years and in 1933, by paying 1932 and 1933 subsequent taxes (or certificates issued therefor) could proceed to have the single lien for unpaid taxes for 1925, 1926, 1927, 1928, 1929, 1930, 1931, 1932 and 1933 foreclosed in a single suit. Or as an alternative, he might pray simply that his 1931 installment certificate be foreclosed *subject* to the previous certificates, if he should so elect.

The latter course might be more advantageous to pursue in some cases; for example, in the case of a tax certificate acquired on a residence property which the certificate holder did not want to divest the owner of to satisfy his demand, unless absolutely necessary, but which demand for his own particular certificate he might wish to coerce payment of by instituting legal proceedings against the home owner liable for the particular delinquent certificate. Accordingly, the statutes allow for several alternative methods of tax foreclosure, the legislative intent being to provide for adequate tax enforcement without undue harshness to either tax certificate purchasers or to delinquent taxpayers.

The rule referred to and stated in 3 Cooley on Taxation (4th Ed.) par. 1242, page 2473, as follows:

" 'Tax-liens,' it is said, 'take priority in the reverse order of other liens. As to all other liens the first in order of time is *prima facie* superior to those of a later date. In the case of tax-liens, however, the "last shall be first and the first last." The general and universal rule is that in proceedings *in rem* to enforce the payment of taxes the last tax levied and sought to be enforced is superior and paramount to the lien of all other taxes, claims, or titles.' This rule is well settled," is limited to cases wherein the proceeding to enforce the tax is wholly an *in rem* proceeding. There

must be involved several separate, different and distinct tax liens of different dates, else the rule has no application.

In Florida our tax foreclosure proceeding is *quasi in rem* and not wholly *in rem*. And unlike the law of other states, our law does not make the statutory lien for taxes depend upon either the entry, or validity of a particular year's formal annual assessment. The tax lien is created and comes into existence *eo instanti* a liability for *unpaid* (whether assessed or not) taxes accrues against taxable property. It is dischargeable only by payment in full of all taxes that in law can be and should have been assessed and collected against the property during the period allowed by the statutes for making assessments and the collection of the tax thereon. A complete omission of taxable properties from the assessment rolls for one or more years does not affect the tax liens for those years, since the statutes authorize back assessments in order to make the lien enforceable. A consideration of these distinctive features of our tax law convinces me that there is at all times but one lien for taxes, which lien is apportionable according to the certificates issued to represent particular installments of unpaid taxes.

BUFORD, J. (dissenting).—This case is before us on rehearing granted after the opinion was filed herein on July 14, 1933. In the original opinion we inadvertently said: "'The decree must be reversed because of the error which is apparent caused by the failure of the bill of complaint to show that the complainant had paid the due and unpaid taxes assessed for the year 1931." This statement is at variance with the remainder of the opinion and should not have been included therein. We held in that opinion that, "The payment of all subsequent taxes, however, is not a condition precedent to the right to foreclose a tax certificate

lien except in cases within the purview of Chapter 14572, *supra."* The chapter referred to was of the Acts of 1929.

After further consideration of the question as to whether or not the practically universal rule applicable to tax sale certificates, "The last shall be first and the first shall be last," obtains in Florida we are convinced that the sounder reasoning must support the conclusion that such rule does obtain in this State and that there is nothing in our Constitution, statutes or previous opinions of this Court, which requires us to adopt a different rule.

This question was not presented in the case of the City of Sanford v. Dyal, *supra,* and we did not hold in that case that a different rule of priority of liens is to be applied to certificates. We did hold in that opinion, as stated in the former opinion in this case, that "In the distribution of the proceeds of a State tax lien foreclosure sale of lands in a municipality, when the municipal liens are adjudicated, all amounts due on State, county and municipal *tax* liens when they are of equal dignity, should be paid ratably, if the funds are insufficient to pay all such tax liens. If there be a surplus after paying all the State, county and municipal *tax* liens, the municipal *special assessments* should be paid ratably if the funds are not sufficient to pay all, unless otherwise provided by law or by proper decree."

This language is not equivalent to holding that a lien created by a sale and evidenced by a certificate for a certain year is of equal dignity to a lien created by a sale and evidenced by a certificate of a later year. A proper construction of the holding in that case is that liens created by a sale and evidenced by a certificate for the non-payment of municipal taxes of a certain year are of equal dignity to a lien created by a sale and evidenced by a certificate for the non-payment of county and State taxes for the same year.

Some of the courts have held that, "in the absence of a statute to the contrary, a tax deed regularly issued cuts off delinquent taxes for years previous to that in which the deed is dated." We cannot go far because of the provisions of Section 894, R. G. S., which was Section 1 of Chapter 10040, Acts of 1925, which provides in part: .

"All taxes imposed pursuant to the Constitution and laws of this State shall be a first lien superior to all other liens on any property against which such taxes have been assessed which shall continue in full force and effect until discharged by payment."

In view of this language, I think we could not hold that the lien is completely wiped out by the issuance of a subsequent tax certificate based on a valid sale.

The appellate courts of the States of this Nation have so universally held that the later tax certificate regularly issued creates a lien entitling the holder to priority of payment that it is unnecessary to cite the various authorities. It has been so held in the cases cited in the original opinion and also by the courts of Michigan, Wisconsin, California, Pennsylvania, Minnesota, New Jersey, North Dakota and Ohio.

While under our statutes we, as above stated, cannot hold that the lien created by the prior sale and issuance of certificate is completely wiped out by a subsequent sale and issuance of certificate, the lien of the prior sale and issuance of certificate is relegated to a position and dignity inferior to the lien of the subsequent sale and certificate. The prior lien I think is entitled to be considered in the foreclosure of the subsequent lien and if the fund realized under the foreclosure is sufficient to pay the amount of the subsequent lien then the excess may be applied to the older lien.

We have heretofore, in the case of City of Sanford v. Dyal, 104 Fla. 1, 142 Sou. 233, held:

"In foreclosing State tax liens upon lands within a municipality, all past due and unpaid State, county and municipal tax liens and municipal special assessment liens against the property should be adjudicated and the proceeds of the foreclosure sale should be applied first to all liens for past due and unpaid taxes, including those held by the municipality or its assignees, if any, as well as those held by the State or its assignees; second to the past due special assessments; and then to the parties having an interest in the land as may be required by law and appropriate decree."

"The statements in the original opinion herein, 142 Sou. 233, that unpaid taxes and assessments remain liens upon lands until paid where the lands are sold in tax foreclosure proceedings for less than all past-due taxes and assessments should be confined to liens for taxes and assessments that become due subsequent to the decree of sale and to such lien for past due taxes and special assessments as have not been duly adjudicated and extinguished."

And we also said, in the same opinion:

"When a municipality having tax and special assessment liens is made a party to a suit in equity to foreclose State and county tax liens, all the municipal liens may be appropriately adjudicated in the suit. Where a municipality is made a party to the foreclosure of the lien of a State and county tax certificate, and the municipal liens are adjudicated, such liens are extinguished or transferred to the proceeds of the foreclosure sale by virtue of the judicial proceeding and adjudication in equity resulting in a decree and sale of the land under the various liens; and such judicial extinguishment or transfer of the liens as a result of

statutory proprieties enforced in equity when the land does not sell for enough to pay all adjudicated liens, constitutes a payment and discharge of the liens within the contemplation of the statutory provision that such liens shall continue until paid. See Van Huffel v. Harkelrode, 248 U. S. 225, 52 Sup. Ct. 115, 76 Law Ed. 256, Dec. 7, 1931. When the liens were created the statute authorized them to be enforced in equity. Sections 5034, 896, 2955, 2977, C. G. L., 1927. The powers and functions of courts of equity are recognized by the Constitution and laws of this State. Sections 5, 11, 12, Art. V, Constitution; Sections 5034, 896, 1020, 4919, 5004, C. G. L., 1927.

"In the distribution of the proceeds of a State tax lien foreclosure sale of lands in a municipality, when the municipal liens are adjudicated, all amounts due on State, county and municipal *tax* liens when they are of equal dignity, should be paid ratably, if the funds are insufficient to pay all such tax liens. If there be a surplus after paying all the State, county and municipal *tax liens,* the municipal *special assessments* should be paid ratably if the funds are not sufficient to pay all, unless otherwise provided by law or by proper decree."

Thereby, we adopted the law as enunciated by the Supreme Court of the United States in Van Huffel v. Harkelrode, 52 Sup. Ct. 137, 76 Law Ed. 256.

The rule which we applied there to the discharge of the lien created by special assessments and the distribution of the fund I think may be and should be for the same reasons applied to the discharge of liens created by prior assessments, sales and issuance of certificates because of default in the payment of general taxes.

The reason for the rule is logical and apparent. The first duty of the State is to collect taxes to maintain its

government. Likewise, the first duty of every citizen is to pay the lawfully assessed taxes against his property to support the State. The present need of the State Government is more important than some past need of the Government. Therefore, it is more important that the State collect its current, or nearest to current, tax than it is that it collect some long-past-due tax. If land should have been sold for taxes in 1925 and the certificate purchased by "A" and "A" failed to pay the tax on that land in 1926 for the year 1925, it is due to be sold again and if sold in 1926 and "A" purchases the certificate, which he has the right to do, he keeps his lien created by the certificate in 1925 in good standing; that is, he protects his lien. But, if he allows the tax to go unpaid and allows "B" to purchase the certificate of 1926, it is but fair and just that "B" should thereby procure a fresher and better claim than that which "A" had.

Now, under this state of facts, when "A's" certificate ripens in 1927 he is required under the statute to pay subsequent and omitted taxes. Therefore, he must pay "B" for that certificate which "B" purchased in 1926, together with interest and costs, and he must pay the tax for 1926, if it was omitted or if it has become delinquent.

Should we adopt the rule which was enunciated in the original opinion here and is now adhered to by a majority of the Court, the result will be that after some four or five tax sales of the same land a tax certificate will be of no value whatsoever because the purchaser of such certificate upon the foreclosure will be required to prorate the proceeds of the foreclosure sale ratably between all prior certificate holders and he could not hope to realize the amount invested in his certificate. The law should be so construed as to encourage the purchase of tax sale cer-

tificates and thereby to insure the payment of the tax, that the expenses incident to government may be met from the funds derived from the tax.

The unanimity with which our courts have applied this doctrine of priority to tax sale certificates constitutes abundant evidence of the wisdom of the rule.

For the reasons stated, I think the former opinion should be overruled insofar as same is in conflict with what is said here and the judgment should be modified to conform with views herein expressed.